WILLIAM R. BARR et al., Respondents, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY et al., Appellants.

Where the majority of the stockholders of a corporation are illegally pursuing a course in the name of the corporation which is in violation of the rights of the other stockholders, and which can only be restrained by a court of equity, an action to obtain equitable relief may be maintained by an aggrieved stockholder, or those whose rights are thus affected may join as plaintiffs in the action.

The complaint herein alleged in substance that plaintiffs were stockholders in the S. B. & E. J. R. Co., a railroad corporation ; that a lease of said road and its franchises was executed to defendant, the E. R. Co., by which the lessee agreed to pay annually as rent thirty per cent of the gross earnings of the leased road, such annual payment to be not less than $105,000, of which sum $70,000 was to be applied in payment of interest on bonds issued by the lessor, and $35,000 to be appropriated and paid as dividends on its stock ; that the lessee purchased most of the lessor's stock with intent to control its management, and avoid payment of rent ; that said lessee having become insolvent, defendant J. was appointed its receiver, and took possession of the leased road subject to the lease ; that the property and franchises of the lessee were sold on foreclosure, and purchased by defendant the N. Y., L. E. & W. R. R. Co. ; that J. was president of the defendant last named and of the lessor, and its officers were the officers and agents of the other defendants, and the management of its affairs was under defendants' control ; that said defendants entered into a conspiracy for the purpose of depressing the lessor's stock that they might purchase at a low figure, and for the purpose refused to pay that portion of the rent so agreed to be appropriated as dividends, and those controlling the lessor declined and refused to demand and collect the said rent. Plaintiffs asked for an accounting of the earnings of the leased road during the time the said defendants respectively controlled and operated the same, and that they be required to pay over the rent in arrear. *Held*, that the action was maintainable; that defendants were properly joined, and that there was no misjoinder of causes of action.

(Argued June 12, 1884; decided October 7, 1884.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made April 10, 1882, which reversed an order of Special Term sustaining a demurrer to plaintiffs' complaint, and which overruled the demurrer.

The complaint herein contained substantially these allegations :

Plaintiffs held and owned certain shares of the stock of the Suspension Bridge and Erie Junction Railroad Company ; said company (styled in the pleadings the bridge company) was organized by parties interested in defendant, the Erie Railway Company, and its bonds were guaranteed by that company. While the road of the bridge company was being constructed, said road and the company franchises were leased to the Erie company, at a rent of thirty per cent of its gross earnings — the rent, however, to be not less than $105,000 per annum, $70,000 of which, it was understood and agreed, was to be applied to pay interest on the said bonds, and the balance ($35,000) to be appropriated and paid as dividends upon the lessor's stock. The lessee also executed to the holders of the stock a guaranty of payment of seven per cent annual dividends, which would amount to the $35,000. The lessor took possession under the lease and operated the leased road until 1875, when it became insolvent, and defendant Jewett was appointed receiver of its property and franchises, and as such took possession of and operated the leased road, and received its earnings. Said lessor paid the rent as agreed up to 1872, but thereafter made default as to the $35,000. The said receiver also paid the interest on the bonds, but wrongfully retained the $35,000, and refused to pay the same. In 1872, after the lessee had refused to perform its guaranty, it, having purchased a majority of the lessor's stock, caused its president and certain of its officers to be elected as the directors of the said lessor, and so obtained control of that company, and from that time refused to pay said rent in full, and denied its liability so to do, it and its officers having conspired together to compel the holders of the stock of the bridge company to sell their stock at less than its true value. In 1877, said Jewett, who was then president of the Erie Railway Company, was elected a director and the president of the bridge company, and has continued in the latter office since that time. The property and franchises of the Erie company were sold

on foreclosure sale, and purchased by defendant, the New York, Lake Erie and Western Railroad Company, who took possession thereof, and of said leased road, which it has since operated, but has refused to pay the $35,000 annual rent, and by means of the controlling interest in the stock of the bridge company held by Jewett and the Erie company, its board of directors and all its officers have been elected from officers and agents of the Western company, and the defendants control and manage the bridge company for purposes of their own, and in disregard of plaintiffs' rights, and the management of said company, is wholly in the interests of the defendants; and the control so acquired is being used to defeat plaintiffs of their rights, and to prevent any dividends being declared on said stock. The lessee and its successors in interest have failed to keep any account of the earnings of the said leased road, and have conspired together to deprive plaintiffs of their rights, etc.

Plaintiffs asked for an accounting as to the earnings of the leased property during the time the same was operated by the defendants respectively, and of the rents in arrear, and that the same be adjudged to be paid to the bridge company, or their proportion thereof to plaintiffs, and that the Western company be hereafter required to keep proper accounts of the earnings of the leased road, and the bridge company be required to demand and collect the rents, and to pay over to plaintiffs the dividends to which they are entitled.

The defendants, the Western company, the bridge company and Jewett, demurred jointly on the grounds that there was a misjoinder of parties plaintiff; that there was an improper joinder of different causes of action, and that the complaint did not state facts sufficient to constitute a cause of action.

*W. W. MacFarland* for appellants. Separate causes of action against different defendants cannot be joined; each cause of action stated in the complaint or declaration must affect all the defendants. (Code, § 448; *Nichols* v. *Drew*, 19 Hun, 490; *Burroughs* v. *Tostevan*, 75 N. Y. 567; *French*

v. *Salter*, 17 Hun, 546; *Sinclair* v. *Fitch*, 3 E. D. Smith, 677; *Viall* v. *Mott*, 37 Barb. 209; *Voorhies* v. *Voorhies*, 24 id. 150; *Lexington, etc.*, v. *Goodman*, 25 id. 469.) The liability of the Erie company, defendant, for rent rests on privity of contract as well as possession. (4 Kent's Com. 97.) The liability of the receiver, if any, is not a personal liability, but one that attaches to the fund or property in his possession as receiver. (High on Receivers, § 255; *F. L. & T. Co.* v. *Central R. R. of Iowa*, 2 McCrary, 181; *Winfield* v. *Bacon*, 24 Barb. 161; *Barton* v. *Barbour*, 14 Otto, 126.) The receiver's obligation to pay rent embraced only the period of his actual possession. (*Commw.* v. *Franklin Ins. Co.*, 115 Mass. 278; High on Receivers, § 274; Taylor's Landlord and Tenant, § 444.) The obligation of the New York, Lake Erie and Western Railroad Company to pay rent, of course, commenced with its possession, and there was no express or implied assumption of the indebtedness of preceding tenants. (Taylor's Landlord and Tenant, § 444.) A demurrer admits only such facts as are well pleaded. (Story's Eq. Pl., §§ 23, 452; *Dillon* v. *Barnard*, 21 Wall. 430; *Teller* v. *Patten*, 20 How. 125; *Griffing* v. *Gibb*, 2 Black, 519.) Facts are not well pleaded unless they are sufficient in law, relevant to an issue, and stated with requisite certainty. General and vague assertion is not enough, and in all cases the construction is against the pleader. (Story's Eq. Pl., § 452; *McElwain* v. *Welles*, 9 Wend. 562; *Vernon* v. *Vernon*, 2 My. & C. 145; *Benson* v. *Hadfield*, 5 Beav. 546; *Att'y-Gen'l* v. *Mayor, etc.*, 2 My. & C. 406; *Williams* v. *Flight*, 5 Beav. 546; *Balls* v. *Musgrave*, 3 id. 284; *Wormald* v. *De Lisle*, id. 18; *Munday* v. *Knight*, 3 Hare, 497.) The mere assertion of the pleader that a conspiracy existed goes for nothing; facts must be stated from which the court can determine as matter of law its existence or non-existence. (*Sheridan* v. *Jackson*, 72 N. Y. 170; *Scofield* v. *Whitelegge*, 49 id. 259; *Pattison* v. *Adams*, 7 Hill, 127; High on Injunctions, § 35; *C. R. R. Co.* v. *Fosdick*, 15 Cent. L. J. 159; *Miller* v. *U. P. Ry. Co.*, 2 McCrary, 87.) A general charge of conspiracy or confederacy

in a complaint in equity was always treated as surplusage, call-
ing for no answer. (Story's Eq. Pl., §§ 29, 856.) Under the
Code it is equally useless, and does not in any way affect the
cause of action. (*Harrington* v. *Bruce,* 84 N. Y. 103 ; *Rich*
v. *N. Y. C. & H. R. R. R. Co.,* 87 id. 394; *Graves* v.
*Waite,* 59 id. 156.) The plaintiffs show no title to maintain
any action in the premises. (*Hawes* v. *Oakland,* 14 Otto,
450.)

*Theron G. Strong* for respondents. The defendants were
engaged in the commission of a wrong against the plaintiffs,
which rendered them jointly liable. (*Brown* v. *B., N. Y. &
E. R. Co.,* 27 Hun, 342.) It was proper for the plaintiffs to
unite in bringing the suit. (Code, § 446 ; *Lummiss* v. *Brown,*
16 Barb. 325 ; *Simar* v. *Canaday,* 53 N. Y. 298–305 ; *Gil-
lespie* v. *Forrest,* 18 Hun, 110 ; *Smith* v. *Schultz,* 14 id. 54 ;
*Breet* v. *First Universalist Soc.,* 5 id. 149 ; *Brinckerhoff* v.
*Brown,* 6 Johns. Ch. 139 ; *Fellows* v. *Fellows,* 4 Cow. 682.)
There is no force in the objection that several causes of action
have been improperly united. (*Richtmeyer* v. *Richtmeyer,*
50 Barb. 59 ; *N. Y. & N. H. R. R.* v. *Schuyler,* 17 N. Y.
592, 603.)

MILLER, J. The first question presented upon this appeal
relates to the right of the plaintiffs to maintain this action.
The plaintiffs were stockholders of the·Suspension Bridge and
Erie Junction Railroad Company, and, as such, they enjoyed
the same and a common interest in any income, profit or funds
of that company out of which dividends might be realized to
which they might become entitled upon the stock held by them
respectively. Under such circumstances provision is made by
law by which they may unite in an action against a proper
party or parties to ascertain whether any fund exists in which
they have an interest as stockholders of the company, and to
compel an accounting and appropriation of the same in pay-
ment of the dividends due to them. Section 446 of the Code
of Civil Procedure provides for the joinder of all parties as

plaintiffs "having an interest in the subject of the action and in obtaining the judgment demanded." The plaintiffs were entitled, under the guaranty of the Erie Railway Company to the bridge company, to the benefit of the fund to be paid to said bridge company, which they were to receive as an annual dividend on their stock, and the obligation incurred thereby now rests upon the receiver and the New York, Lake Erie and Western Railroad Company, according to the averments contained in the complaint. All the stockholders have a common interest in the question whether such funds shall be paid over or accounted for. For this reason the plaintiffs were united in interest in maintaining this action for the purpose of ascertaining whether any such fund existed and the amount, if any, in which they had a right to share.

The complaint shows that each one of the plaintiffs is the owner of a portion of the $500,000 capital stock of the bridge company and has an interest in the dividends which may be earned by that company, which properly belongs to them and is identical with the interest of all the stockholders, and this places them in a relation to the defendants, the cause of action and the amounts which are in controversy, and for which the plaintiffs claim an accounting, or which may be recovered, which entitle them to maintain this action.

The complaint also charges the defendants with combining and conspiring to prevent the plaintiffs from obtaining the amounts to which they are lawfully entitled as stockholders of the bridge company and thus inflicting upon them a pecuniary injury. They thus have a unity of interest, and if they can succeed in establishing the alleged conspiracy of the defendants and that it deprived the plaintiffs of their rights, there is no misjoinder of parties as to them. The action of the plaintiffs is one which is recognized in the law where persons having mutual and the same interests unite in one action to protect their rights. It prevents a multiplicity of suits in favor of each stockholder and is the ordinary and convenient remedy which is encouraged in courts of equity. It is no answer to say that the plaintiffs' interests in the subject-matter

are separate and not joint. The subject-matter here is mainly the lease itself and the collection of the rents therein provided for. In these the plaintiffs have a joint interest. The charge of conspiracy affects the plaintiffs equally and alike, and if it can be upheld, renders the defendants jointly liable, and no valid reason exists, either in law or equity, why several stock-holders of a corporation seeking redress of those who are con-spiring to defeat their rights should not be allowed to unite in a single action for that purpose.

We are referred by the learned counsel for the appellants to the case of *Hawes* v. *Oakland* (14 Otto, 450), as authority for the doctrine that no action can be maintained by a stockholder of a corporation under the allegations contained in the complaint in the action at bar. We do not think that the case cited sustains the position contended for. It is there laid down that where the board of directors of a corporation is acting in a manner destruc-tive of the rights of the other shareholders, or where the major-ity of the shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation which is in violation of the rights of the other shareholders and which can only be restrained by the aid of a court of equity, an action to obtain relief may be maintained by a stockholder. Such a case, we think, is presented in the complaint by the plaintiffs, if the allegations of conspiracy are sufficiently stated, which allegations will hereafter be considered, and brings the plaintiffs within the rule laid down in the case cited. It was not neces-sary, under the section of the Code presented, to show an active effort on the part of the plaintiffs with the body of the corpo-ration affected to induce remedial action on its part, as it is apparent, from the facts stated, that such effort would have been of no avail.

The complaint alleges that the management of the bridge company is now wholly in the interest of said receiver or said New York, Lake Erie and Western Company and those they represent, and that without the aid of the court these plaintiffs have no means of causing a demand by said bridge company of said unpaid rent or earnings, or of enforcing its payment or

having any dividend' declared, and that the defendants are practically, both lessor and lessee, under said lease, and are interested and using their interests and authority to defeat the plaintiffs of their just rights and in preventing any dividend being declared on said stock.   This averment furnishes sufficient reason why the plaintiffs have not made a demand or employed any active measures for the purpose of obtaining their rights, as it is apparent that any such action would be useless and of no avail.   We cannot, therefore, resist the conclusion that there was a proper joinder of parties plaintiff, and that the complaint is not demurrable upon any such ground.

It is further insisted that there is a misjoinder of causes of action in the plaintiffs' complaint.   The rule is well settled that separate causes of action against different defendants cannot be joined, and that each cause of action stated in the complaint must affect all the defendants.   We think that this rule has not been violated in the plaintiffs' complaint, and that but one cause of action is stated therein.   The action is against the bridge company, and the parties who have received or are entitled to receive funds which are properly applicable to the payment of dividends and which should be paid to the bridge company and be appropriated for that purpose.   The defendant, the bridge company, has passed into the hands of the other defendants.   Three of the defendants, the Erie Railway Company, Mr. Jewett, as its receiver, and the New York, Lake Erie and Western Railroad Company, have become the owners of the same property, have succeeded to the same interests, and are controlled by the same power and the same influence.   They, in fact, represent the bridge company, and, as it is alleged, conspired together and have had the control and direction of the corporate property of the bridge company and of its affairs.   They had the power to pay over or to withhold the funds which the plaintiffs were entitled to receive and to have applied as dividends.   The defendants have been acting in concert, and it is claimed sought to prevent the application of the income to the payment of the dividends, and, in view of the facts, it is not apparent that a

series of separate actions would enable the plaintiffs to avail themselves of the rights to which they were entitled as stockholders of the bridge company. Unless the plaintiffs have a remedy in equity against all these defendants it is difficult to see how they can obtain the proper relief. The Erie Railway Company has passed into the hands of the receiver, and no remedy therefore exists against that corporation, except against the receiver who represents that company, which was under an obligation to pay the rent under the lease, and the New York, Lake Erie and Western Railroad Company is the owner of the lease. It is a fair assumption that the money received passed through the hands of the last-named defendant and that it should be held liable to account for or pay over the same to the plaintiffs.

It would seem that it is only through an equitable action that the proper relief can be obtained, and but for this the plaintiffs would be without means of redress. The law seeks to avoid a multiplicity of actions. This action is brought to enforce the payment of the rent under the lease from the bridge company to the Erie Railway Company, which devolved upon Jewett as receiver, and the New York, Lake Erie and Western Railroad Company as successors in interest to the Erie Railway Company. The wrongful acts of the defendants consist in an effort to defeat the rights of the plaintiffs by virtue of the lease referred to. In this respect the defendants are acting in harmony, and there is but a single cause of action against all of them. There would seem to be no principle which would require three actions instead of one for the final determination of the plaintiffs' rights. It would be inequitable and unjust to increase litigation by several suits when the whole subject-matter of the controversy can be disposed of in this action. In the *New York & New Haven Railroad Co.* v. *Schuyler* (17 N. Y. 592), COMSTOCK, J., says: "And, in general, where there is a common liability in the defendants and a common interest in the plaintiffs, different claims to property, at least, if the subjects are such as may without inconvenience be joined, may be united in one and the same suit." The same

relief is sought in this action against all the defendants, and they severally have an interest in all the questions involved. The validity of the lease, its legal effect and the right of the plaintiffs to the dividends, are the subject-matter of the controversy in which all the defendants are interested. The lessor and the lessee and receiver of the latter, appointed upon its becoming insolvent, the assignee of the lessee and of such receiver, the last of whom it is claimed holds earnings applicable to dividends, and nearly all the stock of the lessor, and who holding money to pay rent refuses to do so, are the parties defendant in this action. The defendants are charged with a conspiracy, as we have seen, and it is evident that each of them has a common and an adverse interest to the plaintiffs, and are, therefore, proper parties within the provisions of section 447 of the Code of Civil Procedure.

There is no force, we think, in the objection urged to the complaint that the allegations, as to the conspiracy stated therein, are irrelevant and immaterial. The right of the plaintiffs to maintain the action is based mainly upon the ground that a conspiracy existed, and allegations showing that such was the fact were both material and proper, and in fact indispensable. The point made by the appellants in this connection appears to be that the allegations in the complaint in reference to a conspiracy were insufficient on their face, and of themselves did not show such an unlawful combination, or such acts on the part of the defendants as established a cause of action against them. We do not understand that the allegations of conspiracy are founded entirely upon a mere refusal to pay rent under the lease by the lessee or its successors, and such is not, we think, the effect of the statements in the complaint upon that subject. The complaint contains a statement of the various acts showing the organization of the bridge company, the execution of the lease and its terms, the insolvency of the Erie Railway Company, the appointment of the receiver and the transfer to him of the receipts of the bridge company, the organization of the New York, Lake Erie and Western Railroad Company and its purchase of the lease in

question, and the rights under the same, and established a lia-
bility of the Erie company, the receiver and the Western com-
pany to pay the rents reserved in accordance with the terms
of the lease, which liability was recognized by the payment of
rent.   Thus far no question exists as to the liability of the
parties respectively for the rent under the lease to the persons
entitled to same or any portion thereof.   The omission to pay
more than $70,000 of the rent reserved, leaving the $35,000
which was to be appropriated to the payment of dividends on
the stock unpaid, is shown by the complaint to have been the
result of a conspiracy to depress the stock, thus impairing
its value, and to induce or compel the owners to sell the same
at a reduced price, and to enable the defendants to acquire title
to it.   These facts being alleged with sufficient certainty it
would follow that the design of the defendants was to force
the plaintiffs to part with their property at far less than its
value without adequate consideration, and for a mere nominal
amount, a proceeding which evinces a combination and con-
spiracy to compel the sale of property to the parties engaged
in it.   The complaint contains an express averment that the
Erie Railway Company and its officers wrongfully refusing to
pay said rent in full, and denying its liability so to do, and for
the purpose of enabling it, or them, to purchase said bridge
company stock at a low figure, conspired together to compel
the holders of said stock to part with the same at less than its
par or true value, and that said conspiracy and wrongful effort
have been and now are continued by the other defendants.
Here is an explicit allegation of a conspiracy by the Erie Rail-
way Company and its officers, in the first instance, which of
itself was unlawful, and that this unlawful conspiracy was con-
tinued by the other defendants.   This was sufficient to charge
the defendants with an unlawful act to prevent a payment of
the dividends due to the plaintiffs, and to sustain the allega-
tions that a conspiracy existed in violation of the rights of the
plaintiffs which created a liability in their behalf against those
engaged in such conspiracy.   The defendants were acting
together in one transaction in a manner which was calculated

to defeat the rights of the plaintiffs as stockholders.   From the facts stated it is easy to perceive that as a matter of law an unlawful conspiracy existed which affected the interests of the plaintiffs, and it cannot be said, we think, that the complaint merely shows the act of a single individual or body corporate, and thus no conspiracy could exist.   It was the Erie Railway Company and its officers who were engaged in this transaction, and together they constituted more than a single individual or identity.   The complaint does not contain a mere general charge which sometimes may be regarded as surplusage, but it states facts from which the conclusion is to be derived that a conspiracy in reality was entered into.   Upon these the action is based, and without them it has no foundation.   It, therefore, bears no analogy to a case where general allegations are made unsupported by facts which tend to establish a charge of conspiracy.

The fact that the three defendants, as tenants in succession, were each liable for different portions of the rent does not defeat the right of the plaintiffs to maintain this action, if there was a conspiracy to depress the stock, and prevent the plaintiffs from receiving the amount due them respectively, in which all the defendants were engaged, and that conspiracy was successful.   They thus made themselves joint actors in the transaction which entitled the plaintiffs to maintain an action against them together, and to compel each one of them to account for what had been severally received by them, and so far as could be done, to make provision for the future payment of their dividends.

After a careful examination of the plaintiffs' complaint we are brought to the conclusion that the facts stated therein not only establish that the plaintiffs have a common interest in compelling the defendants to account, but that they have no other sufficient and proper remedy except by the maintenance of this action.   The conduct of the defendants has been of such a character as to render them liable to account for their acts and proceedings to such of the stockholders as have not received their dividends.   Were it otherwise, officers of corpora-

tions might enter into combinations to the prejudice of a portion of their stockholders, which would be seriously detrimental to their interests, and leave them without any lawful mode of redress. It is the peculiar province of a court of equity to grant relief against such a wrong, and the fact that the officers of the corporation itself refuse to act, by reason of a combination entered into by them to the injury of a portion of the stockholders, is no answer to such an action.

The order of the General Term was right, and should be affirmed.

All concur, except RAPALLO, J., not voting.

Order affirmed.